IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

_____

| | | |
|---|---|---|
| JAY ANTHONY NOTTINGHAM, *PRO SE*, | § | |
| TDCJ-CID No. 1490726, | § | |
| FBI No. 29075T4, | § | |
| RANDALL COUNTY No. 9541, | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | 2:10-CV-0060 |
| | § | |
| JOEL RICHARDSON,  Sheriff Randall County; | § | |
| TIM LACEY, LP - Medical Contractor for | § | |
|    Randall Co. Sheriff's Dept.; | § | |
| SCOTT DAVIS, LP - Medical Dept. of | § | |
|    Randall Co. Sheriff's Dept.; | § | |
| RONALD LACY, M.D., Medical Doctor | § | |
|    under whose license Medical Care is | § | |
|    given at Randall Co. Jail; | § | |
| RANDALL COUNTY COMMISSIONERS | § | |
|    COURT; | § | |
| NFN CARROLL, Crpl., Correctional Officer, | § | |
|    Randall County Jail; | § | |
| JOE MORRIS, Lt., Jail Administrator, | § | |
|    Randall County Jail, and | § | |
| RANDALL COUNTY, | § | |
| | § | |
|    Defendants. | § | |

## REPORT AND RECOMMENDATION

    Before the Court are the Motions to Dismiss and Supplemental Motion to Dismiss filed

by defendants SCOTT DAVID and TIM LACEY, the Motion to Dismiss by defendant

Dr. RONALD LACY, and Defendants' Joint Limited Motion for Summary Judgment by

defendants CARROLL, DAVIS, LACEY, LACY, MORRIS, and RICHARDSON.  The

Magistrate Judge has considered defendants' motions and plaintiff's responses, along with all the

associated responses and replies and sur-replies filed by the parties, whether specifically referenced herein or not.

Plaintiff JAY ANTHONY NOTTINGHAM, acting pro se and while a prisoner confined in the custody of the Texas Department of Criminal Justice, Correctional Institutions Division, has filed suit pursuant to Title 42, United States Code, section 1983 complaining against the above-referenced defendants.  Plaintiff has paid the $350.00 filing fee and is not proceeding in forma pauperis.  Plaintiff's claims against defendant RANDALL COUNTY COMMISSIONERS COURT were dismissed May 25, 2011.

By his December 13, 2010 amended complaint[1], plaintiff alleges, in general terms, that defendant TIM LACEY failed to provide plaintiff with an examination by a licensed medical doctor on his arrival at the Randall County Jail and, instead, determined plaintiff's conditions were ficticious and self-induced.  He states the failure to provide a proper diagnosis and medications prescribed by his free world physicians caused a deterioration of plaintiff's health. Plaintiff alleges defendant Dr. RONALD LACY failed to properly supervise defendant TIM LACEY and never personally examined plaintiff before prescribing medications and ordering lab work.  He "accepted the erroneous diagnosis of [defendant TIM LACEY] that [plaintiff's] conditions were due to a self-induced hunger strike and were fictitious . . . ." resulting in deterioration of plaintiff's condition and kidney damage.

Plaintiff's original complaint and his amended complaint lacked a meaningful factual basis for his claims.  In fact, when confronted by defendants' motions to dismiss, plaintiff did not

---

[1]At the June 1, 2011 hearing, the Court stated it read plaintiff's December 13, 2010 amended complaint as containing claims against defendant RICHARDSON in his official capacity which, for all practical purposes, amounted to claims against RANDALL COUNTY.  The Court told plaintiff that, to the extent he was seeking to add RANDALL COUNTY as a defendant, his motion to amend, which had been filed just prior to the hearing, was granted, in that RANDALL COUNTY was a defendant.

submit a proposed amended complaint with specific allegations, but merely attempted to set such forth in a February 15, 2011 "Declaration of Jay Anthony Nottingham" [Docket Entry no. 105] filed in response to defendants' motions to dismiss and in his multiple attempts to supplement or correct his declaration.  Plaintiff repeated this procedure in his June 20, 2011 Supplemental Response [Docket Entry no. 175].

Plaintiff also submitted a June 1, 2011 motion for leave to file amended complaint and a September 7, 2011 Motion for Leave to Amend Proper Party and to Clarify A.D.A. Violations, citing Rules 15(a)(2) and 15(c)(B), (c)(ii), Federal Rules of Civil Procedure; however, these motions have been denied for the reasons set forth in the Orders of denial.

Although plaintiff's specific factual allegations are not contained in his original or his first amended complaint, the Court has reviewed both of them, as well as plaintiff's testimony presented at the hearing, to ensure all of plaintiff's claims have been considered.

At the June 1, 2011 evidentiary hearing in cause no. 2:10-CV-0023, *Nottingham v. Finsterwald*, which was conducted just before the hearing in this cause, plaintiff and Nancy Morrison Nottingham both testified plaintiff had received no medication during the two weeks he spent in the Wheeler County Jail prior to his transfer to the Randall County Jail.  The Court takes judicial notice of this testimony.

In his February 15, 2011 Declaration, plaintiff states he was incarcerated in the Randall County Jail on several occasions, including October 23, 2001[2], October of 2005, October of 2007, and January 28, 2008.  Plaintiff states he was booked each time as a pre-trial detainee and is familiar with the booking procedures at Randall County.  He states that upon his January 2008

---

[2]Plaintiff states this first incarceration in Randall County Jail ended October 26, 2011.

3

booking he was not given a copy of the Inmate Handbook and did not get the opportunity to read the grievance procedure. Plaintiff does not state the grievance procedure had changed from any of his previous incarcerations in the jail. [Plaintiff's February 15, 2011 Declaration pp1-2]

Plaintiff also states he suffered a stroke in 2001 which left him with a weakened right side, that he suffered a brain injury when young which left him with a seizure disorder requiring medication, and that he presently suffers from polycystic kidney disease. Plaintiff states that, following his stroke in 2001 and incarceration in 2002, he spent twenty-two months in rehabilitation before being released [Plaintiff's February 15, 2011 Declaration p2]. At the June 1, 2011 hearing, plaintiff stated that before his January 2008 arrest and incarceration, he utilized a cane to ambulate but said sometimes he had needed a wheelchair.

Plaintiff alleges he first saw defendant DAVIS on January 28, 2008, the date he arrived at the Randall County Jail from the Wheeler County Jail. Plaintiff alleges he told defendant DAVIS he took Dilantin in liquid form because it was easier to swallow and absorb. DAVIS responded plaintiff would receive the pill form while he was at the Randall County Jail and asked plaintiff for his medical records. Plaintiff responded he didn't carry them with him "but that Randall County Jail already had his records from . . . 2002 and [plaintiff's] medical conditions . . . [had not] improve[d] with age." [Plaintiff's June 20, 2011 Supplemental Response p3]. Plaintiff also alleges he asked to be allowed to switch from his transport wheelchair to his larger regular wheelchair, but defendant DAVIS responded plaintiff could make do as a wheelchair did not appear to be a medical necessity. [Plaintiff's February 15, 2011 Declaration p3].

Plaintiff alleges on January 29, 2008, the day after his arrival at Randall County Jail, he was taken to the infirmary and seen by defendant TIM LACEY, a licensed paramedic providing healthcare under contract with Randall County through Panhandle Correctional Care.  Plaintiff says TIM LACEY asked about his medical conditions and changed his Dilantin dosage from 400 mg. to 100 mg. and his Phenobarbital from 75 mg. to 30 mg., dropped his prescriptions for Prevacid 30 mg. bid, Celebrex 200 bid, and Vicodin prn., adding Rimiditin 150 mg. and Motrin instead.  In response to plaintiff's complaint concerning the lowered Dilantin dosage and request for it in liquid form, defendant TIM LACEY responded plaintiff would be fine and to let him know if anything happened.  Plaintiff states he then asked to see the physician who provides medical services to the jail and TIM LACEY responded that he would pass on plaintiff's request along with his chart.  Plaintiff says TIM LACEY also asked plaintiff for his medical records and plaintiff replied he already had plaintiff's medical records and nothing had changed. [Plaintiff's June 20, 2011 Supplemental Response pp3-4].

Plaintiff alleges he had his first seizure at the jail on January 29, 2008, that medical was not called, and that he was placed in his bed by two other inmates.  Plaintiff says he submitted a grievance the next day.  [Plaintiff's June 20, 2011 Supplemental Response p4].  Plaintiff alleges on January 31, 2008, he was unable to get up because he was sick to his stomach and could not eat due to his pain.  He says he was refused visitation that day because his cell was not put in order as required by jail regulations.  [Plaintiff's February 15, 2011 Declaration p3].  Plaintiff then states that, as a result of the restriction on his visitation privileges, Nancy Morrison Nottingham made an unnecessary trip to see him.  [Plaintiff's February 15, 2011 Declaration p4].  Nancy Morrison Nottingham was plaintiff's girlfriend at the time of these events and married

plaintiff soon after his conviction. Plaintiff does not state how the visitation restriction or regulation violated his constitutional rights or who was responsible for it.

Plaintiff alleges on February 1, 2008, he complained of not feeling well and defendant DAVIS came to his cell. Plaintiff says he told DAVIS he thought he was going to have a seizure, and DAVIS "shrugged his shoulders, turned and walked away." Plaintiff says he had a seizure about twenty minutes later. [Plaintiff's June 20, 2011 Supplemental Response pp5-6]. In his December 13, 2010 amended complaint, plaintiff gives a slightly different account of the incident saying that, when he told defendant DAVIS he was having a seizure, DAVIS responded by asking how plaintiff knew and then walked away.

Plaintiff alleges on February 8, 2008, defendant DAVIS came to his cell to draw blood because plaintiff had consented to blood tests to allow defendant TIM LACEY to determine what his Dilantin and Phenobarbital levels were. Plaintiff says defendant DAVIS was unsuccessful on his first attempt to hit the vein and, on the second attempt, "chased the vein" until plaintiff withdrew consent and asked, "Where is the Doctor?" Plaintiff says DAVIS accused him of moving but plaintiff contends only his vein moved. [Plaintiff's June 20, 2011 Supplemental Response p6].

Plaintiff states that by February 7th or 8th, he was considered to be on a hunger strike by jail staff. He was in his cell when defendants CARROLL, DAVIS, and SHERIFF RICHARDSON came by and told him he needed to start eating the food provided by the jail or they would remove his commissary privileges. Plaintiff's commissary privileges were suspended, and Nancy Morrison Nottingham wrote a February 10, 2008 letter to defendant TIM LACEY asking that plaintiff's commissary privileges be restored. Defendant TIM LACEY

communicated with jail personnel, resulting in the restoration of plaintiff's commissary privileges on February 14, 2008.  [Plaintiff's February 15, 2011 Declaration pp4-5].

In another version of these events, plaintiff alleges he rolled up to the Commissary Cart to buy some chicken soup, but when plaintiff's commissary card was scanned, it showed a restriction and the soup packets were put back.  Plaintiff says he then turned to SHERIFF RICHARDSON and asked why he was being punished for a medical problem and RICHARDSON responded by telling plaintiff to stop refusing to eat.  Plaintiff says when he said he had a medical problem and to talk to defendant TIM LACEY, defendants SHERIFF RICHARDSON and CORPORAL CARROLL responded they had already spoken with him and had gotten their information from him.  [Plaintiff's June 20, 2011 Supplemental Response p7]. Defendant DAVIS is not mentioned in this version of events.  Plaintiff says he talked with defendant SHERIFF RICHARDSON on two other occasions in mid-February while his commissary privileges were restricted and that he spoke with defendant CORPORAL CARROLL asking why he had restricted plaintiff's commissary.  Plaintiff states that when he told CARROLL he could only eat items from the commissary, CARROLL responded that he would eat what he was given on the tray and to take it or leave it.  Plaintiff says he tried to explain that because of his seizures he had trouble swallowing solid food and CARROLL responded that he should write a grievance.  [Plaintiff's June 20, 2011 Supplemental Response p8].

Plaintiff alleges he couldn't eat solid food from the jail and his supply of ice was restricted.  He says he was so weak by February 17th that he had to be assisted to the visitation room.  Plaintiff says he saw defendant TIM LACEY on February 18th and discussed the matter.

Plaintiff says he also complained that he was too weak to get up in the morning and go to his cell door to get his morning medications.  Plaintiff alleges TIM LACEY prescribed two cans of Ensure with each meal, but that evening, defendants DAVIS and CORPORAL CARROLL brought the Ensure at a time different from the evening meal and required plaintiff to drink both cans in their presence.  [Plaintiff's February 15, 2011 Declaration p5].  Plaintiff told them he couldn't do so without throwing up and they became angry.  [Plaintiff's February 15, 2011 Declaration p5].  Plaintiff says he had been allowed ginger ale for a while but, on February 24, 2008, that was discontinued and replaced by kool-aid.  He says his Ensure was discontinued on February 25, 2008, to be replaced by solid food.  Plaintiff says he submitted a grievance which was removed from the grievance box by the guard.  Plaintiff says this is the last time he attempted to exhaust administrative remedies.  [Plaintiff's February 15, 2011 Declaration pp5-6].

Plaintiff alleges he saw defendant TIM LACEY in late February and told him his seizures were increasing, to which TIM LACEY remarked to let him know if he had any more. [Plaintiff's June 20, 2011 Supplemental Response p9].  When plaintiff said he had been asking to see the doctor for over a month, defendant TIM LACEY replied that he would check into the matter.  [Plaintiff's June 20, 2011 Supplemental Response p9].

Plaintiff states his state criminal trial began March 4, 2008 and ended March 6, 2008.  He says his attorney told him she had the flu and that by March 9th, he began to suffer fever, chills, aching, and diarrhea.  [Plaintiff's June 20, 2011 Supplemental Response p10].

Plaintiff alleges he saw defendant SHERIFF RICHARDSON standing by the Commissary Cart again on March 11th or 12th and he rolled up and tried to talk with him. Plaintiff says he complained of "trouble with medical" and said he had written a request to see

DR. LACY, but had been unsuccessful after four weeks of trying.  Plaintiff said he was having

seizure problems that caused his throat to close or to feel like it was closed and that he couldn't

swallow properly.  Plaintiff says defendant RICHARDSON instructed him to write a grievance

and, when he said he had already done so, he responded to "keep writing" and walked away.

[Plaintiff's June 20, 2011 Supplemental Response pp8-9].

Plaintiff argues this incident shows defendant RICHARDSON had knowledge of the

actions of the personnel below him and of the harm and wanton infliction of pain plaintiff

suffered.  Plaintiff argues RICHARDSON "was aware of the quality of the medical care being

provided to the inmates under his supervision and was responsible for the lack of proper training

provided to the staff on the handling of the serious medical needs of the inmates of the Randall

County Jail."  [Plaintiff's June 20, 2011 Supplemental Response p9].

Plaintiff alleges on March 12, 2008, defendant TIM LACEY requested defendant LT.

MORRIS make arrangements to have plaintiff transferred to TDCJ as quickly as possible and

listed plaintiff's medical conditions as weight loss of 19 pounds, seizure disorder, polycystic

kidney disease, and a hunger strike.  [Plaintiff's June 20, 2011 Supplemental Response p11].

Plaintiff alleges defendant TIM LACEY "recognized that [plaintiff] was a medical liability to

Randall County Jail and that he had errored [sic] in not referring [plaintiff] to a physician for an

accurate diagnosis of [his] medical conditions at a much earlier date."  [Plaintiff's June 20, 2011

Supplemental Response p11].

Plaintiff states he was seen by LVN Frost on March 15, 2008, who did not think he had

the flu, but allowed Ms. Morrison to bring him Immodium.  When plaintiff submitted another

sick call slip on March 17th, he was seen by defendant TIM LACEY the next day, but nothing was done except an examination.

Plaintiff submitted a March 19, 2008 sick call slip and was seen by defendant TIM LACEY who diagnosed thrush. Plaintiff was given Mystantin oral suspension to use as a mouth wash and was prescribed Immodium mg. BID for four days, which plaintiff says did not help his diarrhea. [Plaintiff's June 20, 2011 Supplemental Response pp10-11].

Plaintiff said in March he complained to CORPORAL CARROLL of pain in his kidneys, left arm, and head and that he "suspected that [his] seizure levels were low." CARROLL replied he would have the levels checked the next week but that it was 2 ½ or 3 weeks before they were checked. Plaintiff says the blood draw and urine were taken on March 20, 2008 and the results were reported Saturday, March 22, 2008, showing his Dilantin and Phenobarbital levels were extremely low. [Plaintiff's June 20, 2011 Supplemental Response p10]. No action was taken on those results before plaintiff's March 25 transport to Huntsville, Texas.

Plaintiff states that Lt. MORRIS is the Jail Administrator of the Randall County Jail and is responsible for the daily operations of the Jail, including the Medical Department.

Plaintiff alleges defendant LT. MORRIS made the arrangements for his transport to TDCJ and knew the type of vehicle arranged to transport plaintiff, a Randall County van, was not handicapped accessible. Plaintiff says on March 25, 2008, he was placed on the bench seat of the van for transport but lost his balance when the van made a right turn. He says he fell to his right side on the floor. Plaintiff says the officers left him there for the fourteen hour trip to Huntsville. Although they stopped several times for gas and for the officers to eat and use restroom facilities, plaintiff states he was left on the floor of the van. He says he had a

temperature of 102 degrees when he arrived at Huntsville and was dehydrated. Plaintiff says the physician who examined him found the thrush had spread to his entire digestive system and his throat was almost swollen shut. Plaintiff was placed on IV fluids and says he suffered damage to his kidneys and decreased renal function. [Plaintiff's June 20, 2011 Supplemental Response pp11-12].

By his amended complaint, plaintiff complains defendant TIM LACEY failed to diagnose his thrush and recognize its severity or diagnose his flu, although he allowed plaintiff to receive Immodium and Ginger Ale brought by Nancy Morrison Nottingham.

Plaintiff also claims defendant TIM LACEY freely discussed plaintiff's personal medical conditions and history with the Assistant District Attorney in charge of plaintiff's criminal case. Plaintiff alleges this information was used to create a false and demeaning image of plaintiff's disabilities and handicaps during the course of his trial that prejudiced and inflamed the jury.

## DEFENDANTS TIM LACEY AND DAVIS' MOTION TO DISMISS AND DEFENDANT DR. LACY'S MOTION TO DISMISS

Defendants LACEY and DAVIS's motion to dismiss [Docket Entry #45] was superseded by plaintiff's first Amended Complaint and defendants' subsequent motion to dismiss plaintiff's first amended complaint [Docket Entry #76]. By their motion to dismiss plaintiff's first amended complaint [Docket Entry #76], Supplemental Motion to Dismiss [Docket Entry #107], and Response to Plaintiff's Supplemental Response to Motion to Dismiss [Docket Entry #182], defendants TIM LACEY and DAVIS argue plaintiff has failed to state a claim against them under the Eighth Amendment, the Fourteenth Amendment, the A.D.A., fraud, or breach of contract and that, in any event, plaintiff's claims are barred by the Statute of Limitations. Defendants also argue they are entitled to qualified immunity. By his First Amended Motion to Dismiss [Docket Entry #78] and

his Reply to Plaintiff's Supplemental Response to Defendants' Motions to Dismiss [Docket Entry #180], defendant Dr. RONALD LACY advances the same arguments.

Plaintiff has responded [Docket Entry 90, 111, and 134] that he has sufficiently plead facts to support his claims, his claims are not barred by limitations because they are part of a continuing tort which did not end until his transport to prison on March 25, 2008.  Plaintiff responded to defendant Dr. RONALD LACY's motion to dismiss by his Response [Docket Entry no. 101] and his Supplemental Response [Docket Entry no. 175].

## DEFENDANTS' JOINT LIMITED
## MOTION FOR SUMMARY JUDGMENT REGARDING AFFIRMATIVE
## DEFENSE OF FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

As the Court stated at the June 1, 2011 evidentiary hearing conducted, in part, on defendants' limited motion for summary judgment, plaintiff's motion to amend, also filed June 1, 2011, was granted only to the extent that his December 13, 2010 amended complaint was read to allege claim(s) against defendant RICHARDSON in his official capacity, *i.e.*, against RANDALL COUNTY.  Defendants' Joint Limited Motion for Summary Judgment is, therefore, considered by the Court as having been filed by RICHARDSON in both his individual and official capacities, that is, by RANDALL COUNTY.  To the extent plaintiff may wish to argue RANDALL COUNTY has not been served or has not answered, the Court notes that unserved and defaulting former officials are entitled to "benefit from the appearing defendants' favorable summary judgment motion." *Lewis v. Lynn,* 236 F.3d 766, 768 (5th Cir.2001); *see also Bloch v. Samuels,* No. H-04-4861, 2006 WL 2239016, *9 (S.D.Tex. Aug.6, 2006).  Consequently, the motion for limited summary judgment is considered to be filed on behalf of all defendants.

By their joint motion for limited summary judgment, defendants submit summary judgment evidence consisting of a sworn Affidavit by defendant SHERIFF RICHARDSON, plaintiff's booking sheet, arrest report, capias, the inmate handbook for the Randall County Jail, an Acknowledgment of Receipt of Orientation signed by plaintiff on January 28, 2008, and a Property Release Sheet.

Defendants argue it is mandatory under the Prison Litigation Reform Act that administrative remedies be exhausted before bringing suit in federal court. They contend their evidence shows that a grievance system existed at the Randall County Jail, and plaintiff was informed of such grievance system at orientation on intake. They further contend defendant RICHARDSON's affidavit shows plaintiff did not file any grievances in 2008 while in Randall County Jail. [Defendants' November 24, 2010 Appendix at p10]. Thus, defendants present evidence showing a grievances system existed and that plaintiff did not exhaust that grievance system on any claim asserted in this lawsuit.

Plaintiff filed his Motion to Challenge Defendants' Joint Limited Motion for Summary Judgment etc. on December 13, 2010 [Docket Entry 64], which the Court construes as plaintiff's response. This response contains a statement by plaintiff that it is true and correct under penalty of perjury "to the best of my knowledge" and is not in compliance with Title 28, United States Code, section 1746, entitled "Unsworn Declarations under Penalty of Perjury." Nevertheless, plaintiff subsequently cured this defect by his January 18, 2011 "Reply to Defendants' Reply [etc]" [Docket Entry no. 92] in which he stated he "remove[d]" the phrase, bringing his verification in compliance with Title 28, United States Code, section 1746. By his response, plaintiff argues he did "plainly and effectively exhaust his administrative remedies by filing grievances" . . . "and that none of his grievances were returned to him, and on two (2) occasions witnessed his grievance being torn up,

once having it torn up in his face." [Plaintiff's December 13, 2010 response p1]. Plaintiff goes on to say, "Plaintiff states that he received the Handbook as stipulated by the defendant Joel Richardson" and appears to argue the defendants committed a RICO Act violation by keeping and destroying his grievances. [Plaintiff's December 13, 2010 response p2]. Plaintiff further argues defendants have merely stipulated that he did not file any grievances but that he knows otherwise. [Plaintiff's December 13, 2010 response p2].

By their December 27, 2010 reply [Docket Entry no. 74] to plaintiff's response, defendants point out plaintiff admits in his response that he received the Randall County Jail Handbook outlining the grievance process and direct the Court's attention to plaintiff's statement in his original complaint at page 7 where he admits he did not file grievances at that time but argues he would have filed grievances if he had known various facts. Defendants further argue plaintiff has offered no evidence to support his contention that he exhausted his administrative remedies. Defendants further argue plaintiff is bound by his sworn factual assertions in his original complaint that he did not file any grievances. Defendants contend plaintiff's factual assertions in his amended complaint and his summary judgment response, that he did attempt to exhaust administrative remedies against the individual defendants, should be treated as an affidavit that does more than supplement previous sworn testimony but, in fact, contradicts it and, therefore, cannot be used to defeat a motion for summary judgment. Defendants also point out plaintiff's unsworn declaration is not in substantial compliance with Title 28, United States Code, section 1746 because it ends with the qualifying phrase "to the best of my knowledge."

By his January 18, 2011 "Reply to Defendants' Reply [etc]" [Docket Entry no. 92], plaintiff represents Nancy Morrison Nottingham typed his complaint because his handwriting was illegible

to those unfamiliar with it and that she mistakenly omitted a page stating he had attempted to exhaust administrative remedies during his incarceration at Randall County and the second page was intended to address complaints that had surfaced after his departure. [Plaintiff's January 18, 2011 reply p2]. Lastly, plaintiff states he didn't know defendants considered the phrase "to the best of my knowledge" to be improper and offensive and says he will gladly remove it. [Plaintiff's January 18, 2011 reply p5].

On February 15, 2011, plaintiff submitted a motion for leave to file amended response [Docket Entry No. 103] to which he attached his February 15, 2011 Declaration [Docket Entry No. 105] and a Declaration by Nancy Morrison Nottingham [Docket Entry No. 104]. By his February 15, 2011 Motion for Leave to File Amended Response, plaintiff presents his unsworn declaration that he was not given an inmate handbook on processing into the Randall County Jail and was not given one later. Plaintiff also states he did not view the orientation video, grievance procedures were not posted in the jail, and no jail official assisted plaintiff with attempts to grieve. Further, plaintiff states that, after he was "released[3]," he did not have an opportunity to file on the newly revealed violations.

Defendant's filed their February 28, 2011 Objections [Docket Entry No. 106] to the February 15, 2011 unsworn declarations by plaintiff and by Nancy Morrison Nottingham on the bases of hearsay, lack of personal knowledge, and lack of relevance. Defendants also argue plaintiff's statement that he did not receive an inmate handbook directly contradicts his previous statements in Docket Entry #64 at page 2 and his statement in Docket Entry #92 at page 3 where he accepts

---

[3]Plaintiff was not released; he was transferred to the custody of the Texas prison system.

defendants' affidavit testimony concerning his receipt of an inmate handbook and orientation upon intake into the Randall County Jail.

Defendants further filed their February 28, 2011 Joint Response to Plaintiff's Pleadings contesting plaintiff's January 10, 2011 motion for extension of time to file further responses to their motion for summary judgment and contesting his January 18th and February 15th pleadings discussed above.  To the extent defendants ask the Court to strike or not to consider plaintiff's sur-reply, the request is denied.  The Court has allowed plaintiff, a pro se litigant, extreme latitude so he may conduct his case as best he can.  To the extent defendants object to plaintiff's motion for leave to file an amended response, defendants' objection is overruled.  The Court liberally construes pro se pleadings and the substance of plaintiff's amended response is contained within his motion and will be given consideration.  To the extent defendants defend their motion for summary judgment and the Affidavit by Sheriff Richardson submitted therewith, the Court finds Richardson's Affidavit is competent summary judgment evidence and is accepted for the truth of the matters asserted therein.

Subsequent to the pleadings set forth above, plaintiff submitted motions to make repeated amendments to his own unsworn declaration and that of Nancy Morrison Nottingham.  The Court conducted a June 1, 2011 evidentiary hearing in this cause and in cause no. 2:10-CV-0023, *Nottingham v. Finsterwald*, during which hearing plaintiff was allowed to testify and to call Nancy Morrison Nottingham to the stand to testify with respect to the matters covered in their unsworn declarations, as well as other issues.  The defendants were also allowed to present evidence and testimony and plaintiff was allowed to cross-examine their witnesses; and argument was accepted from all parties.

## THE STANDARD OF SUMMARY JUDGMENT REVIEW

Summary judgment may be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). Consequently, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party bears the burden of proof. *Celotex v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Because the consequences of summary judgment are so severe, the court must be careful to avoid premature termination of legitimate lawsuits merely because of unskilled presentations. *Murrell v. Bennett*, 615 F.2d 306 (5th Cir. 1980). In determining a movant's request for summary judgment, all reasonable inferences must be made in favor of the party opposing the motion. *Phillip's Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987). Only disputes of facts that could affect the outcome of the suit at trial will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A complete failure of proof concerning an essential element of the nonmoving party's case is fatal and entitles the moving party to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Where the movant does not bear the burden of proof at trial, it may meet its summary judgment obligation by pointing out the absence of evidence to

support the non-movant's claims.  *See, Celotex v. Catrett*, 477 U.S. 317 at 325.  Once the movant

has met its obligation, the burden shifts to the non-movant to adduce evidence showing a genuine

issue of material fact for trial.  *Id*. at 324.  This burden may be satisfied by designating specific facts

on the record and articulating the precise manner in which they support the non-movant's claims.

*Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).  The nonmovant must delineate specific facts

which demonstrate the presence of a genuine issue of material fact.  *Id.*; *Judwin Properties, Inc. v.*

*U.S. Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir. 1992).  A motion for judgment as a matter of law is

properly granted when the facts and inferences point so strongly in favor of the movant that a

rational jury could not arrive at a contrary verdict.  If there is substantial evidence, that is, evidence

of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion,

then the motion for judgment as a matter of law should be denied.  *Waymire v. Harris County,*

*Texas*, 86 F.3d 424, 427 (5th Cir. 1996).

## RULE 12(b)(6) STANDARD OF REVIEW

Rule 12(b)(6) provides for dismissal of an action for failure to state a claim upon which relief

can be granted.  Fed.R.Civ.P. 12(b)(6).  If the complaint lacks a required element which is a

prerequisite to obtaining relief, dismissal is proper.  *Clark v. Amoco Prods. Co.*, 794 F.2d 967, 970

(5th Cir. 1986).

In reviewing a motion for 12(b)(6) dismissal, the court must consider all of plaintiff's well-

pleaded facts as true and view them in the light most favorable to the plaintiff.  *Johnson v. Johnson*,

385 F.3d 503, 529 (5th Cir. 2004) (citing *Great Plains Trust Co. v. Morgan, Stanley, Dean, Witter,*

*& Co.*, 313 F3d 305, 312 (5th Cir. 2002).  "[C]onclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Southern*

*Christian Leadership Conference v. Supreme Court of the State of Louisiana*, 252 F.3d 781, 786 (5th Cir. 2001)(quoting *Fernandez-Montez v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993)). All reasonable inferences must be drawn in favor of the plaintiff's claims. *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). The belief that a plaintiff is unlikely to prevail is not sufficient to support dismissal. *Scheuer v. Rhodes*, 416 U.S. 232, 2326 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Dismissal for failure to state a claim does not require a determination that, beyond a doubt, the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal,* _____ U.S. _____, _____, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citation omitted).

Although a district court may not go outside the complaint, the Fifth Circuit has recognized one limited exception. *Scanlan v. Texas A&M University*, 343 F.3d 533, 536 (5th Cir. 2003). A district court may consider documents attached to a motion to dismiss if the documents are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Id*. (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Dismissals may also be based on authenticated prison records. *Banuelos v. McFarland,* 41 F.3d 232, 234 (5th Cir.1995) (*per curiam*).

## THE LAW AND ANALYSIS

**RULE 12(b)(6) REVIEW OF STATUTE OF LIMITATIONS ARGUMENT**

All defendants have argued plaintiff's claims are barred by the Statute of Limitations.

It is undisputed that plaintiff did not mail this lawsuit to the Court for filing and that Nancy Morrison Nottingham presented the instant suit to the Clerk in person for filing on March 22, 2010. Nancy Morrison Nottingham was plaintiff's girlfriend at the time of the events in this suit and married plaintiff soon after his criminal conviction. Plaintiff dated his signature on the original complaint as March 10, 2010 and has offered no explanation why it would take twelve (12) days for his wife to file the lawsuit after he had signed it. Aside from his transport to TDCJ, plaintiff has complained of no act or omission which occurred after March 19, 2008 when he was given treatment by defendant TIM LACEY for thrush. As plaintiff states in his original complaint, even his discovery that defendant TIM LACEY disclosed his medical information to the Assistant District Attorney occurred during his trial, on or before March 6, 2008.

There is no federal statute of limitations for civil rights actions; therefore, the two-year Texas general personal injury limitations period is applied. *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). Further, where state statutes of limitation are borrowed, state tolling principles are the "primary guide" of the federal court, and may be disregarded only where the state tolling rule is inconsistent with federal policy. *Slack v. Carpenter*, 7 F.3d 418, 420 (5th Cir. 1993) (citing *F.D.I.C. v. Dawson*, 4 F.3d 1303 (5th Cir. 1993). The accrual date of a section 1983 action is determined by federal law. *Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 2091, 166 L.Ed.2d 973 (2007). A plaintiff must know of "(1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Piotrowski v. City of Houston,* 51 F.3d 512, 516

(5th Cir.1995). A plaintiff does not need to know that he has a legal cause of action; he only needs to know the facts that would ultimately support a claim. *See Harrison v. United States,* 708 F.2d 1023, 1027 (5th Cir.1983). Actual knowledge is not necessary "if the circumstances would lead a reasonable person to investigate further." *Piotrowski,* 51 F.3d at 516. A section 1983 claim accrues "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured" and that there is a connection between his injury and the defendant's actions. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)(internal quotation marks and citation omitted).

**Mailbox Rule**

The prison Mailbox Rule is the standard for determining the filing date for pleadings of pro se prisoner litigants established by the United States Supreme Court in *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed2d 245 (1988). This flexible approach to the application of deadlines is justified by a pro se prisoner litigant's dependence on prison officials for the filing of his pleadings and his inability to exercise control over that filing. *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002). That same Mailbox Rule is not applied where prisoner litigants are represented by counsel because such a prisoner litigant "has an agent through whom he can control the conduct of his action, including the filing of pleadings." *Id*. Other circuits have refused to apply the Mailbox Rule to pro se litigants who utilize a non-attorney intermediary to file their pleadings. *Cousin*, 310 F.3d at 847 n.2 (citing *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002)(holding Mailbox Rule not applicable to pro se prisoner who sent habeas petition to his daughter for mailing); *United States v. Cicero*, 214 F.2d 199, 204-05 (D.C.Cir. 2000)(limitations not tolled where filing delayed because prisoner forwarded petition to jailhouse lawyer who later was placed in administrative segregation);

*Kapral v. United States*, 166 F.3d 565, 567-68 (3rd Cir. 1999)(habeas petition filed by prisoner's attorney not entitled to prisoner mailbox rule); *Paige v. United States*, 171 F.3d 559, 560-61 (8th Cir. 1999)(Mailbox Rule not applied where prisoner mailed petition to brother for preparation and filing)). Given that plaintiff did not mail his pleading directly to the Court but instead elected to send it to an intermediary who then brought the petition in person for filing, the Court finds the Mailbox Rule is not applicable to plaintiff's filing of his original complaint. Consequently, with the exception of claims about the conditions of plaintiff's transportation to TDCJ, plaintiff's claims are barred by limitations.

Alternatively, the Court finds even if the Mailbox Rule applied, it would not save plaintiff's claims in any event. With the exception of defendant TIM LACEY's March 12th authorization of plaintiff's transport to TDCJ, his March 18th examination of plaintiff for flu, and his March 19th or 20th examination and treatment of plaintiff for thrush, each act or omission alleged by plaintiff against any individual defendant occurred on or before March 10, 2008. As analyzed subsequently herein, examination of these allegations fails to reveal a statement of claim on which relief can be granted.

Critically, plaintiff has stated he did not attempt to grieve any events which occurred after the discontinuation of his Ensure on February 25, 2008. With respect to the February 25th incident, he says he submitted a grievance which was removed from the grievance box by the guard. Plaintiff says this is the last time he attempted to exhaust administrative remedies. [Plaintiff's February 15, 2011 Declaration pp5-6]. Thus, as analyzed later herein, plaintiff's claims concerning TIM LACEY's March 12th authorization of plaintiff's transport to TDCJ, his March 18th examination of

plaintiff for flu, his March 19th or 20th examination and treatment of plaintiff for thrush, and plaintiff's transport to TDCJ are all barred by his failure to exhaust.

**Continuing Tort Doctrine**

Plaintiff attempts to argue all of the treatment he received from all of the defendants: RANDALL COUNTY; Randall County jail officials RICHARDSON, CARROLL, and MORRIS; the physician, Dr. LACY; and defendants TIM LACEY and DAVIS of Panhandle Correctional Care must be viewed by the Court as one continuing tort which began on the day of his arrival at the Randall County Jail and ended only upon his arrival at TDCJ.

Plaintiff has submitted his June 22, 2011 Brief in Support of the Continuing Wrong Doctrine [Docket Entry no. 179]. Defendants submitted a brief on limitations and the doctrine of continuing tort on June 30, 2011 [Docket Entry No. 181].

Although it is sometimes used by Texas intermediate courts, "[t]he Texas Supreme Court has not 'endorsed nor addressed' the concept of the continuing tort doctrine." *General Universal Systems, Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007)(citing *Walston v. Stewart,* 187 S.W.3d 126, 129 (Tex.App.2006)(quoting *Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814, 816 n. 8 (Tex.2005)); *Flint v. Bureau of Prisons*, 303 Fed.App. 290, 2008 WL 5231856, Dec. 16, 2008 (5th Cir. Tex.).

Therefore the continuing tort doctrine does not apply to bring all of plaintiff's claims within the period of limitations.

Defendants have shown plaintiff's claims are barred by limitations and, therefore, should be dismissed pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

**REVIEW OF LIMITED MOTION FOR SUMMARY JUDGMENT ON ISSUE OF EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Title 42, United States Code, 1997e(a), as amended by Section 803 of the Prison Litigation Reform Act of 1995, provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002).

In his original complaint, plaintiff stated he did not know at the time he was in Randall County Jail various facts about what the Randall County Jail Medical Dept. and the jail had been told by Sheriff Finsterwald at Wheeler County or by the Assistant District Attorney. He says, "Had I known these facts during nmy incarceration at Randall County, I would have filed the grievance procedures against Randall County at that time." [Plaintiff's original complaint at page 7]. The Court notes Randall County was not, at the time of plaintiff's original complaint, a defendant in this suit and a plain reading of plaintiff's complaint is that he did not exhaust administrative remedies concerning the claims arising from his detention at Randall County, as opposed to his previous detention at Wheeler County. Plaintiff signed his original complaint under penalty of perjury.

Only after defendants filed their November 24, 2010 Limited Motion for Summary Judgment on exhaustion of administrative remedies, did plaintiff change his sworn statement concerning exhaustion by filing an amended complaint and representing his original complaint had been erroneously typed by Nancy Morrison Nottingham. In his response [Docket Entry 64] filed contemporaneously with his December 13, 2010 amended complaint, plaintiff states he did plainly

and effectively exhaust his administrative remedies by filing grievances, none of which were returned to him and two of which were destroyed in his presence as illegible. Plaintiff also states he never appealed those incidents because he didn't have copies of the grievances which were not returned to him or were destroyed.

Not only has plaintiff changed his representation concerning exhaustion of administrative remedies, he has changed his statement concerning receipt of the inmate handbook. Compare, "Plaintiff states that he received the Handbook as stipulated by the defendant Joel Richardson" [Docket Entry 64 p2] with "Plaintiff Nottingham . . . did not receive or read the Rules and Procedures Manual [the inmate handbook], and it was not posted or readily distributed to the detainee's population, nor did any Randall County Official tell him about the grievance process or assist him with the attempts initiated by the Plaintiff himself to address his grievances." [Docket Entry 103 p3].

In addition, even the substance of plaintiff's claims changes. He stated in his March 17, 2011 Supplemental Declaration as follows:

> It had been [plaintiff's] belief that the man named Tim Lacey was the jail physician. Dr. Lacey as he was known to the [plaintiff] chose to ignore the serious nature of [plaintiff's] obvious medical conditions and provided no treatment for the constant, excruciating pain endured by the [plaintiff]."

[Docket Entry 115 p 12, par. 12]. Compare that with plaintiff's June 20, 2011 account of his first visit with defendant TIM LACEY on January 29, 2008 (the day after his arrival at Randall County Jail) [Docket Entry 175 pp 3-4] stating that, when defendant LACEY lowered his dosages of Dilantin and Phenobarbital, plaintiff responded as follows:

> At this time I asked to see Dr. Lacy to enable me to get the proper dosage on [sic] my medications. I informed Tim Lacey that I knew

that he was not a licensed physician and he had no legal right to lower medications which had been ordered by a licensed physician.

[Docket Entry 175 p4].

Plaintiff signed, under penalty of perjury, the original complaint which he now abjures, as well as each of the other conflicting pleadings referenced above.

The inconsistent and contradictory nature of plaintiff's pleadings concerning exhaustion present a fact issue and a credibility determination. Credibility assessments are within the sound discretion of a district court making a determination of frivolousness, but that discretion is limited to factors necessary to determine whether a suit is frivolous. *Cay v. Estelle*, 789 F.2d 318, 326 (5th Cir. 1986). In a section 1915(d) credibility assessment, the most important considerations are based upon objective factors such as a complainant's change of position or major internal inconsistencies. *Cay v. Estelle*, 789 F.2d at 327. Moreover, in *Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010), the Fifth Circuit agreed with the Seventh, Ninth, and Eleventh Circuits that factual disputes concerning exhaustion may be resolved by judges, noting judges have the power to resolve disputed facts dispositive of certain threshold issues such as subject matter jurisdiction, personal jurisdiction, and venue. Likening exhaustion to personal jurisdiction and venue in that it is an affirmative defense that allows defendants to assert plaintiffs have not invoked the proper forum for resolving a dispute, the Fifth Circuit ruled, "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time," and concluded "judges may resolve factual disputes concerning exhaustion without the participation of a jury."

The Court finds plaintiff's initial statements concerning exhaustion contained in his original complaint more credible than his subsequent contradictory assertions. Plaintiff's later statements were plainly made with an eye to their effect on his litigation and only after a summary judgment

motion had been filed pointing out the importance and consequence of his initial pleading. Moreover, plaintiff signed each of these inconsistent pleadings under penalty of perjury and has not satisfactorily explained his inability to set forth accurate and truthful representations at first opportunity.

Thus, the Court finds plaintiff should be held to his response in his original complaint and determines he has not shown he exhausted administrative remedies on the issues he presents in this lawsuit.

The Court further notes that, despite plaintiff's his new allegation that he was not given an inmate handbook or informed of the grievance process, plaintiff also pleads that, when he was dissatisfied, he requested a grievance form and attempted to place or had the grievance placed in the grievance box for him after he filled it out. Plaintiff does not allege he was ignorant of the grievance process and his previous stays in Randall County Jail, the most recent one a mere three months earlier, militate against any possible claim by plaintiff that he was unfamiliar with the grievance procedures.

Even if the Court were to accept plaintiff's final version of facts concerning exhaustion, that he was not given an inmate handbook and submitted grievances on some unidentified issues asserted in this cause, dismissal of the lawsuits would still follow. This second version (despite plaintiff's argument that he "plainly and effectively exhaust[ed] his administrative remedies") merely shows plaintiff made an attempt initially and then stopped. Plaintiff does not allege he ever attempted to appeal to any level any denial, loss or destruction of any of his grievances or the failure to resolve or return any of them to him. Thus, even if the Court were to accept plaintiff's attempt to change

27

the substance of his pleading concerning exhaustion, which it does not, plaintiff has not plead facts showing exhaustion of administrative remedies.

Lastly, in the Fifth Circuit, a "strict approach" is taken to the exhaustion requirement. *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003), *overruled on other grounds*, *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2385, 165 L.Ed.2d 368 (2006). The PLRA exhaustion requirement requires proper exhaustion in compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Because the PLRA exhaustion requirement mandates exhaustion in compliance with agency rules, one or more letters by plaintiff or by Nancy Morrison Nottingham to defendant TIM LACEY or to defendant Dr. RONALD LACY, being an act outside of the grievance procedure, is not sufficient to exhaust administrative remedies. Plaintiff must have submitted a valid and timely grievance about the issues presently forming the basis for his claims in this cause and to have appealed an unsatisfactory result through the final stage in order to have exhausted administrative remedies.

The Supreme Court recognized in *Jones* that failure to exhaust administrative remedies is a basis for dismissal for failure to state a claim when that affirmative defense has been asserted by defendants and is properly under court scrutiny. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007) ("As noted, that is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim.). Therefore, plaintiff's failure to exhaust administrative remedies will support dismissal for failure to state a claim.

For the reasons set forth above, the Court FINDS defendants have shown they are entitled to summary judgment as a matter of law on the issue of exhaustion of administrative remedies. Federal Rule of Civil Procedure 56(c). Additionally, plaintiff's claim should also be dismissed for

failure to state a claim. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007).

Even if plaintiff had prevailed on the issue of exhaustion, it would not have assisted him in this lawsuit. Plaintiff has stated, under penalty of perjury, the February 25, 2008 discontinuation of his Ensure and his return to a regular solid diet without ginger ale "was [his] last attempt to exhaust the administration's grievance policy." [Plaintiff's February 15, 2011 Declaration p6, par. 9 at Docket Entry 105 and Plaintiff's March 17, 2011 Supplemental Declaration p10, par. 9 at Docket Entry 115].

Therefore, any claims based on any acts or omissions occurring after February 25, 2008 are, by plaintiff's own admission, unexhausted and, therefore, barred and subject to dismissal under Rule 12(b)(6) and Rule 56(c), Federal Rules of Civil Procedure. Moreover, as analyzed earlier herein, all claims accruing before February 25, 2008 are time barred.

**Rule 12(b)(6) AND EXHAUSTION ANALYSIS OF A.D.A. CLAIMS**

Title II of the A.D.A. provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individuals." 42 U.S.C. § 12102.

Plaintiff cannot sue defendants in their individual capacity under the A.D.A. *Gonzales v. Corpus Christi*, No. C.A. C-05-280, 2005 WL 3058168 *7 (5th Cir. 2005)(citing *Holbrook v. City of Alpharetta*, 112 F.3d 1522 (11th Cir.1997); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010-11

(8th Cir.1999) (*en banc*)).  Plaintiff cannot recover punitive damages in an action under the A.D.A.

*Barnes v. Gorman*, 536 US. 181, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002).

To make out a prima facie case under the A.D.A., plaintiff must show:  (1) he is a qualified individual with disabilities; (2) he was discriminated against by a public entity; and (3) that the discrimination occurred because of his disability.  *Judice v. Hospital Service District No. 1*, 919 F.Supp. 978, 981 (E.D.La. 1996); *see Blanks v. Southwestern Bell Communications*, 310 F.3d 398, 400 (5th Cir. 2002).  Plaintiff has pled he suffered from the flu and from thrush; however, these are temporary, non-disabling impairments, not disabilities.  Examples of temporary, non-disabling impairments include:  "broken limbs, sprained joints, concussions, appendicitis, and influenza" 29 C.F.R. § 1630 app., § 1630.2(j); *see Evans v. City of Dallas,* 861 F.2d 846, 852 (5th Cir.1988) (considering claim that knee surgery constituted a disability under The Rehabilitation Act).  Plaintiff has also stated he suffered seizures and polycystic kidney disease.  Plaintiff has not, however, alleged facts which show either of these conditions was a disability.  Instead, plaintiff claimed his poorly treated pain and various conditions interfered with his ability to eat, which, when combined with his polycystic kidney disease so weakened him that he gradually became unable to ambulate and move his right side.  Plaintiff's claim, therefore, is a failure of adequate medical care, *i.e.*, negligence.  Plaintiff has failed to state a claim under the A.D.A.

Accepting plaintiff's allegation that he was disabled, a simple failure to "attend to the medical needs of [a] disabled prisoner" is not a violation of the A.D.A..  *Woods v. TDCJ*, No. CIV CC-06-222, 2008 WL 189562, at *12 (S.D. Tex. Jan 18, 2008) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.1996) (A.D.A. "does not create a remedy for medical malpractice.")).  *Accord, Olmstead v.  L.C. ex rel. Zimring*, 527 U.S. 581 n.14, 119 S/Ct/ 2176, 2188 n.14, 144 L.Ed.2d 540

(1999)("We do not in this opinion hold that the A.D.A. imposes on the States a 'standard of care' for whatever medical services they render, or that the A.D.A. requires States to 'provide a certain level of benefits to individuals with disabilities.'"). Thus, plaintiff has failed to state a claim under the A.D.A. against defendants Dr. RONALD LACY, TIM LACEY and DAVIS.

Lastly, the Court notes that plaintiff has never argued he exhausted administrative remedies with respect to defendant RANDALL COUNTY. In fact, even giving the narrowest possible reading to the paragraph concerning exhaustion, which he has never actually disavowed as to defendant RANDALL COUNTY, contained in plaintiff's original complaint is given the narrowest possible reading, plaintiff admits to not having exhausted administrative remedies as to his claims against RANDALL COUNTY.

The Fifth Circuit has addressed the issue of exhaustion of claims under the A.D.A. and ruled that, under 42 U.S.C. § 1997e(a), a prisoner must exhaust his administrative remedies before bringing a civil action challenging prison conditions. Because his claim involves matters of prison life, plaintiff must exhaust administrative remedies for all his claims, including those raised under the A.D.A. *Wiley v. McKellar*, 167 Fed.App'x 385, 2006 WL 189941 (5th Cir. (Tx.)). (citing *Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); and *Clifford v. Gibbs*, 298 F.3d 4328, 332 (5th Cir. 2002)).

Moreover, even if plaintiff had exhausted administrative remedies as to his A.D.A. claim against defendant RANDALL COUNTY, the Court finds he has presented only conclusory allegations to support a claim. At the June 1, 2011 hearing, in a final attempt to elicit necessary facts from plaintiff, the Court inquired of him what his A.D.A. claim was and plaintiff's reply was simply

that he was disabled and "they" didn't accommodate him. Conclusory allegations of this type are not sufficient to state a claim.

**FRAUD AND BREACH OF CONTRACT**

By their Motion to Dismiss Plaintiff's First Amended Complaint [Docket Entry #76], defendants TIM LACEY and DAVIS argue plaintiff has not pled fraud with particularity as required under Rule 9(b), FED.R.CIV.PRO. and, although he has requested defendant TIM LACEY's contract with Randall County be voided for his failure to live up to its terms, plaintiff has not pled facts showing he has standing to assert a breach of contract claim or identified any breach and that it was the cause of damages. By his January 18, 2011 "Challenge [etc.]" plaintiff states he is not presently asserting a claim of fraud or breach of contract. Therefore, this issue is moot.

## FAILURE TO STATE A CLAIM, RULE 12(b)(6) FED.R.CIV.PRO.

In the alternative, and assuming solely for purposes of argument that plaintiff's claims are not barred by limitations and/or failure to exhaust administrative remedies, the analysis set forth below shows he has failed to state a claim on which relief can be granted.

**MEDICAL CARE CLAIMS**

"The State's exercise of its power to hold detainees and prisoners brings with it a responsibility under the U.S. Constitution to tend to the essentials of their well-being." *Hare v. City of Corinth,* 74 F.3d 633, 638-39 (5th Cir.1996) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U .S. 189 (1989)). The constitutional rights of a convicted prisoner stem from the Eighth Amendment's prohibition of cruel and unusual punishment; the analogous rights of a pretrial detainee stem from the due process guarantees of the Fourteenth Amendment. *Hare,* 74 F.3d at 639. Except for his claims concerning his transport to the Texas Department of Criminal Justice after his conviction, plaintiff was a pretrial detainee and his claims for that period are analyzed under the

Fourteenth Amendment's due process guarantees.  At the time of his transport to the Texas Department of Criminal Justice, plaintiff was a convicted prisoner and, therefore, his claims concerning his transport are analyzed under the Eighth Amendment.

"Negligent inaction by a jail officer does not violate the due process rights of a person lawfully held in custody of the State." *Id.* at 645.  A pretrial detainee must allege facts showing "the official acted or failed to act with deliberate indifference to the detainee's needs." *Id.* at 648; *See also Farmer v. Brennan,* 511 U.S. 825 (1994).  The same deliberate indifference standard is utilized for pretrial detainees as that articulated by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), for convicted prisoners.  *Hare*, 74 F.3d at 648.

Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994).  In this regard the Supreme Court has cautioned:

> [A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. at 837-38, 114 S.Ct. at 1979.  It is only under exceptional circumstances that a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk.

**TIM LACEY, DAVIS and Dr. RONALD LACY**

Plaintiff's allegations show on his January 28, 2008, intake to Randall County Jail plaintiff was indulged by being allowed to keep and utilize his wheelchair even though it was not considered a medical necessity.  Plaintiff does not make any allegation of fact showing officials had knowledge

of facts indicating he could not ambulate, albeit slowly, with his cane or even without it or that the use of a wheelchair was medically necessary.

At his visit with defendant TIM LACEY the next day, some of plaintiff's medications were changed. Plaintiff has alleged his medical condition deteriorated as a result, but plaintiff does not present any factual allegation showing TIM LACEY knew facts indicating the changes in his dosages of Dilantin and Phenobarbital or the substitutions of Motrin for his Celebrex and Vicodin, and of Rimitidine for his Prevacid would or did cause a substantial risk of serious harm to plaintiff. Further, plaintiff says such changes must have been authorized and any new prescriptions written by defendant Dr. RONALD LACEY.

To the contrary, plaintiff alleges TIM LACEY and DAVIS repeatedly requested his current medical records, only to be told by plaintiff they (Randall County) had his records from 2002 and his condition had not changed. Plaintiff's continued insistence that he was not responsible for providing any corroboration for his subjective complaint and that the defendants should use medical records over five years earlier is without validity.

Plaintiff's own pleadings show he had the benefit of 22 months of rehabilitation after his 2002 incarceration, and plaintiff has presented no factual allegations showing his condition was unchanged by the rehabilitation. Instead, testimony received at the June 1, 2011 hearing from plaintiff and from Nancy Morrison Nottingham revealed plaintiff had improved enough to be released from the nursing home where he received rehabilitation and, although he sometimes used a wheelchair, he also ambulated with a cane. As to the form of the Dilantin, liquid or pill, while plaintiff has alleged he told defendants it was easier for him to take it in liquid form, he has not

alleged any fact showing the liquid form was medically necessary or that defendant TIM LACEY had any basis on which to know plaintiff would be harmed by receiving the Dilantin in pill form.

Plaintiff says he experienced a weight loss of about 19 pounds during his incarceration and claims he suffered seizures while in Randall County Jail. Plaintiff says he complained of having had seizures to defendant TIM LACEY and once either told DAVIS he was having a seizure or said he was going to have a seizure. Plaintiff does not allege any facts from which defendants could have verified the truthfulness of his statements. Moreover, the unsuccessful result of defendant DAVIS' February 8th attempt to draw blood deprived defendant TIM LACEY of any opportunity to monitor the levels of Dilantin and Phenobarbital in plaintiff's bloodstream. Without an opportunity to monitor plaintiff's medications and without observation of any physical indications of seizure activity, defendant TIM LACEY cannot be said to have been deliberately indifferent to plaintiff's seizures.

As to his two-month weight loss of 19 pounds, plaintiff states he complained in mid-February when his commissary privileges were restricted. Plaintiff also alleges, however, that as soon as defendant TIM LACEY received a letter from Nancy Morrison Nottingham reporting that restriction, defendant TIM LACEY contacted jail officials and asked that the restrictions be removed. Further, when plaintiff saw defendant TIM LACEY on February 18th, TIM LACEY responded to his complaints of physical deterioration and weight loss and prescribed two cans of Ensure with each evening meal for a week.

Plaintiff alleges some or all of the jail personnel felt he was on a hunger strike. In deciding the motion to dismiss, this Court is not required to decide this issue. Rather, the question is whether plaintiff has alleged facts showing defendant TIM LACEY had knowledge of facts indicating

plaintiff was in substantial danger of serious harm and ignored them.  The amount of weight loss, over roughly the two month period of January 28 to March 25, is not, of itself, an indication that plaintiff was in serious medical danger and, whether he was on a hunger strike or lost weight because of the flu and thrush he says he later contracted, plaintiff's allegation does not support a claim of deliberate indifference.

Plaintiff says he caught the flu during his trial in early March and was examined by a Nurse Frost on the 15th, who did not diagnose the flu but allowed him medication for diarrhea.  Plaintiff says he was also examined by defendant TIM LACEY on March 18th, but he did not feel plaintiff had the flu either.  Nevertheless, he also allowed plaintiff to continue with the Immodium for diarrhea.

Plaintiff's allegations show his continued complaints resulted in another visit with defendant TIM LACEY on March 19th or 20th and, at that time, TIM LACEY diagnosed thrush and prescribed medication to treat both it and plaintiff's diarrhea.

Review of all of plaintiff's factual allegations shows they simply will not support a claim of deliberate indifference by either defendant TIM LACEY or defendant DAVIS and, at most, will only support a claim of negligence, if even that; however, "negligent medical care does not constitute a valid section 1983 claim."  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Plaintiff alleges on March 12, 2008, defendant TIM LACEY requested defendant LT. MORRIS make arrangements to have him transferred to TDCJ as quickly as possible and listed plaintiff's medical conditions as weight loss of 19 pounds, seizure disorder, polycystic kidney disease, and a hunger strike.  [Plaintiff's June 20, 2011 Supplemental Response p11].  Plaintiff alleges defendant TIM LACEY "recognized that [plaintiff] was a medical liability to Randall County

Jail and that he had errored [sic] in not referring [plaintiff] to a physician for an accurate diagnosis of [his] medical conditions at a much earlier date." [Plaintiff's June 20, 2011 Supplemental Response p11].

Deliberate indifference is shown where the official "knew of and disregarded an excessive risk to the inmate's health or safety." *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir.2001). When the "need" at issue is the detainee's medical care, "[d]eliberate indifference exists wholly independent of an optimal standard of care." *Gobert v. Caldwell,* 463 F.3d 339, 349 (5th Cir.2006).

Plaintiff's own allegation is that his transport was authorized by defendant TIM LACEY on March 12th, well before he examined plaintiff for the flu on the 18th, which plaintiff says he caught from his attorney during trial, and before TIM LACEY diagnosed and treated plaintiff for his case of thrush on the 19th or 20th. Further, plaintiff does not state what his temperature was when he was first loaded into the van for transport or that defendant TIM LACEY had knowledge that his temperature was dangerously high at that time or would become dangerously high during transport. Plaintiff has failed to allege any facts which support a claim against TIM LACEY of deliberate indifference to a serious medical need based on his authorization of transport to TDCJ.

With respect to his claims against Dr. RONALD LACY, plaintiff's allegation that defendant Dr. RONALD LACY failed to properly supervise defendant TIM LACEY will not support a claim under section 1983. The acts of subordinates trigger no individual section 1983 liability for supervisory officers. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314(5th Cir. 1999). Therefore, even if defendant TIM LACEY had been deliberately indifferent to plaintiff's serious medical need, that indifference would not support a claim against defendant Dr. RONALD LACY.

A supervisory official may be held liable only when he is either personally involved in the acts causing the deprivation of a person's constitutional rights, or there is a sufficient causal connection between the official's act and the constitutional violation sought to be redressed. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987)("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir.1981) (*per curiam*); *Alton v. Tex. A & M Univ.,* 168 F.3d 196, 200 (5th Cir.1999) ( "Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983.").

To show the necessary connection, plaintiff argues defendant Dr. RONALD LACY had a duty to supervise defendant TIM LACEY's medical care of plaintiff; however, plaintiff's dissatisfaction with the care he received from TIM LACEY does not show defendant Dr. RONALD LACY knew of facts showing plaintiff was in danger of serious harm from TIM LACEY's medical care and ignored those facts.

To show personal involvement, plaintiff alleges the changes in his medication and dosages must have been made or approved by Dr. RONALD LACY and the attempts to draw blood and run tests, initially unsuccessful but successfully accomplished just before plaintiff's transfer to TDCJ, must also have been ordered or approved by Dr. RONALD LACY. Even if this assumption is accepted as true, the Court notes these affirmative acts by defendant Dr. RONALD LACY do not support a claim of deliberate indifference. Although plaintiff disagrees with the changes in medication and dosage, the most this shows is that defendant Dr. RONALD LACY's acts were, at most, erroneous or negligent. Plaintiff has failed to allege facts which support a claim of deliberate indifference against defendant Dr. RONALD LACY.

QUALIFIED IMMUNITY

Defendants TIM LACEY and DAVIS, as well as Dr. RONALD LACY, also argue they are entitled to qualified immunity against plaintiff's claims.

By his January 18, 2011 Challenge etc., plaintiff responds that, although the Court did not order him to file a *Schultea* Response as to TIM LACEY and DAVIS, they are not entitled to qualified immunity because they are not governmental employees but are individuals employed by Panhandle Correctional Care, Inc. Plaintiff also argues defendant Dr. RONALD LACY is an individual, not a government employee, and therefore, not entitled to qualified immunity. Further, plaintiff argues he has provided sufficient facts to demonstrate the violation of his established statutory or constitutional rights.

"Even limited discovery on the issue of qualified immunity must not proceed until the district court first finds that plaintiff's pleadings assert facts which, if true, would overcome defense of qualified immunity." *Vander Zee v. Reno*, 73 F.3d 1365 (5th Cir. 1996). The Court's consideration of a defense of qualified immunity is guided by a two-step analysis as follows: (1) Do the facts alleged, taken in the light most favorable to the nonmovant, show the officer's conduct violated a constitutional right; and (2) if the allegations are sufficient to state a constitutional violation, was the right allegedly violated "clearly established," that is, would it be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Price v. Roark* 256 F.3d 364, 369 (5th Cir. 2001)(citing *Saucier v. Katz*, 531 U.S. 991, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part by *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

A medical professional who is under contract with the state to provide medical services to inmates at a state prison hospital on even a part-time basis acts "under color of state law," within

the meaning of 42 U.S.C. § 1983, when he or she treats an inmate. *West v. Atkins*, 487 U.S. 42, 50-51, 108 S.Ct. 2250, 2256, 101 L.Ed.2d 40 (1988). Likewise, defendants Dr. RONALD LACY, TIM LACEY and DAVIS, under contract with the county to provide medical care to detainees, were also acting "under color of state law for purposes of plaintiff's civil rights claims. *See, e.g., Hall v. Thomas*, 190 F.3d 693, 696 (5th Cir. 1999). Consequently, defendants Dr. RONALD LACY, TIM LACEY and DAVIS are entitled to qualified immunity from suit under section 1983 unless it is shown by specific allegations that one or both of them violated clearly established constitutional law. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

As previously set forth above, plaintiff's allegations are not sufficient to state a claim of deliberate indifference against any of these defendants and, therefore, they are all entitled to qualified immunity.

**DISCLOSURE OF INFORMATION CONCERNING PLAINTIFF'S MEDICAL CONDITION**

Plaintiff's final allegation against defendant TIM LACEY is that he disclosed information concerning plaintiff's personal medical conditions and history to the Assistant District Attorney in charge of plaintiff's criminal case, which information was used to create a false and demeaning image of plaintiff's disabilities and handicaps during the course of his trial that prejudiced and inflamed the jury.

Plaintiff has provided no factually specific allegation with respect to this claim and has failed to state a claim on which relief can be granted.

Further, as explained earlier herein, this claim is plainly barred by plaintiff's failure to exhaust administrative remedies.

Any claim that the outcome of plaintiff's criminal trial was affected is presently frivolous and must first be pursued in habeas, with its concomitant prerequisite of the exhaustion of state remedies.  A claim that falls under the rule announced in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994), "is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question."  *Hamilton v. Lyons,* 74 F.3d 99, 102 (5th Cir.1996).  No civil rights claim on this allegation will accrue until after *Heck* conditions *have* been met.  *Boyd v. Biggers*, 31 F.3d 279 (5th Cir. 1994).

## CONCLUSION

For the reasons set forth above, it is the RECOMMENDATION of the Magistrate Judge to the United States District Judge that (1) the Motions to Dismiss filed by defendants LACEY, DAVIS, and LACY be GRANTED; and (2) that, drawing all reasonable inferences in favor of plaintiff, defendants have shown there is no material issue of disputed fact which precludes entry of summary judgment in the instant cause on the issue of exhaustion of administrative remedies; they are entitled to judgment as a matter of law pursuant to 42 U.S.C. § 1997e(a); and defendants' joint limited motion for summary judgment regarding the affirmative defense of failure to exhaust administrative remedies should be GRANTED pursuant to  Federal Rule of Civil Procedure 56(c). Accordingly, it is the further RECOMMENDATION of the Magistrate Judge to the United States District Judge, that plaintiff's Civil Rights and A.D.A. claims against all defendants be DISMISSED WITH PREJUDICE AS BARRED BY LIMITATIONS; plaintiff's claims against all defendants be DISMISSED FOR FAILURE TO STATE A CLAIM DUE TO FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES; plaintiff's claims against defendants LACEY, DAVIS, and LACY be DISMISSED WITH PREJUDICE PURSUANT TO RULE 12(b)(6), FED.R.CIV.PRO.,

FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED and on

defendants' defense of QUALIFIED IMMUNITY.

Lastly, in light of the dismissal of defendant RANDALL COUNTY COMMISSIONERS'

COURT[4] and the present recommendation of dismissal for failure to exhaust administrative

remedies[5] and pursuant to Rule 12(b)(6) for failure to state a claim, it is the FURTHER

RECOMMENDATION of the Magistrate Judge to the United States District Judge that the dismissal

of the instant suit should count as a "strike" under the PLRA.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

## TIME TO OBJECT

The plaintiff and all defendants are being allowed fourteen (14) days from the filing date of

this Report and Recommendation to file any objections to the Report and Recommendation.

All parties are advised that extensions of time to file objections will not be routinely granted.

Dismissal of this lawsuit is based primarily on limitations and failure to exhaust and, only

alternatively, on qualified immunity and failure to state a claim. The parties shall <u>timely</u> file any

---

[4]Partial dismissals, that is, dismissals of some but not all defendants in a lawsuit, are counted in the Fifth Circuit as a strike, even where the remaining defendant(s) go to summary judgment or trial. See, e.g., *Adeleke v. Heaton*, 352 F.Appx. 904, 2009 WL 3682539 No. 08-11211 (5th Cir. – Nov. 5, 2009); *Foreman v. Potter*, 2010 WL 2465 232, No. 09-11172 (5th Cir. June 18, 2010).

[5]The Supreme Court recognized in *Jones* that failure to exhaust administrative remedies is a basis for dismissal for failure to state a claim when that affirmative defense has been asserted by defendants and is properly under court scrutiny. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007) ("As noted, that is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim. It is to say that there is no basis for concluding that Congress implicitly meant to transform exhaustion from an affirmative defense to a pleading requirement . . . ." ).

objections they wish to file.

IT IS SO RECOMMENDED.

ENTERED this <u>13th</u> day of September, 2011.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).